# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| WILLIAM J. BUSH,<br><br>    Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, RISK MANAGEMENT AGENCY,<br><br>    Defendant. | No. 16-CV-4128-CJW<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.    INTRODUCTION

This matter is before the Court pursuant to defendant's summary judgment motion. (Doc. 20). Plaintiff filed a timely resistance. (Doc. 26). The Court heard oral argument on July 20, 2017. For the reasons set forth below, the Court grants defendant's motion for summary judgment.

## II.    PROCEDURAL HISTORY

On November 16, 2016, pro se plaintiff, William J. Bush, filed this action against the Risk Management Agency (RMA), an agency of the United States Department of Agriculture (USDA), pursuant to the Freedom of Information Act (FOIA), seeking the disclosure of soybean and corn yields within four townships in Cherokee County, Iowa, as well as other relief involving attorney fees and litigation costs and intra-agency disciplinary action. (Doc. 1).

On December 5, 2016, plaintiff filed an amended complaint. (Doc. 3). On June 8, 2017, the Court denied plaintiff's pro se motions and defendant's motion to dismiss. (Doc. 25). The Court found summary judgment was the most appropriate vehicle to

assess the issues raised by defendant in its motion to dismiss. Plaintiff was ordered to file a response to defendant's summary judgment motion by June 22. Plaintiff timely resisted the motion. (Doc. 26). Subsequently, defendant filed a timely reply. (Doc. 27). The summary judgment motion is now ripe.

### III. SUMMARY JUDGMENT STANDARDS

Generally FOIA-based lawsuits are best handled on summary judgment. *See*, *e.g.*, *Def. of Wildlife v. U.S. Border Patrol*, 623 F. Supp.2d 83, 87 (D. D.C. 2009) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp.2d 68, 73 (D. D.C. 2007); *Farrugia v. Exec. Office for U.S. Att'ys*, No. Civ.A. 04-0294 PLF, 2006 WL 335771, at *3 (D. D.C. Feb. 14, 2006)); *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp.2d 19, 25 (D. D.C. 2000) ("FOIA litigation is typically adjudicated through summary judgment."). Summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2016). A movant must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "An issue of material fact is genuine if it has a real basis in the record[,]" *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question[,]" *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of fact genuine. In

sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." (*Id*. at 248-49 (internal quotation marks and quotation omitted)).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395. Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005).

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita*, 475 U.S. at 587-88 (citation omitted); *see also Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them.") (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citation omitted). Rather, a "court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

The Eighth Circuit Court of Appeals has explained:

> In a FOIA case, summary judgment is available to a defendant agency where "the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Miller v.*

3

> *U.S. Dep't of State,* 779 F.2d 1378, 1382 (8th Cir. 1985) (citing *Weisberg v. U.S. Dep't of Justice,* 705 F.2d 1344, 1350 (D.C. Cir. 1983)).

*Mo. Coal. for Env't Found. v. U.S. Army Corps of Eng'rs*, 542 F.3d 1204, 1209 (8th Cir. 2008). *See also Twist v. Gonzales*, 171 Fed. Appx. 855, 855 (D.C. Cir. 2005) ("The factual question . . . is whether the search was reasonably calculated to discover the requested documents, . . ." (first alteration in original)). A District Court may grant summary judgment for the government "based solely on the information provided in affidavits or declarations when the affidavits or declarations describe 'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Fischer v. U.S. Dep't of Justice*, 596 F. Supp.2d 34, 42 (D. D.C. 2009) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).

The agency has the burden to prove that each requested record is either: unidentifiable, produced, or exempt from FOIA. *Miller*, 779 F.2d at 1382-83. To oppose a summary judgment motion, the non-moving party "cannot simply rest upon conclusory statements, but must instead set forth affirmative evidence showing a genuine issue for trial." *Physicians for Human Rights v. U.S. Dep't of Defense*, 675 F. Supp.2d 149, 156 (D. D.C. 2009) (internal quotation marks and citations omitted). A district court reviews the agency's denial of the FOIA request de novo. *Fischer*, 596 F. Supp.2d at 42.

## IV. UNDISPUTED FACTS

In February 2016, plaintiff filed a FOIA request with the RMA requesting the following information:

> [A]gency records relating to the aggregation by section of total production, acres harvested and yield for corn and for soybeans for four townships [Amherst, Rock, Sheridan, and Tilden] in Cherokee County, Iowa for four years [2012, 2013, 2014, 2015].

4

(Doc. 1, at 1). Plaintiff's above request was made on March 1, 2016, and assigned number 2016-RMA-02545-F. (*Id.*). The complaint contains an appendix of attachments. These attachments encompass the communications between the government and pro se plaintiff. (Doc. 1, at 19-32). The agency provided a "no records" response to plaintiff's request. The agency explained that it did not have information available by sections[1] for townships within a county. The agency also explained that the Federal Crop Insurance Act prohibits the disclosure of identifying producer information and limits disclosure of producer information to the public only in the aggregate form. The agency also directed plaintiff to (http://www.rma.usda.gov/ftp/Miscellaneous_Files/Area_Yield_Data/), a page on its website containing several data files. Specifically, RMA's FOIA Officer directed plaintiff to "cy2016_production_area_yield_history_1130.zip" for an average yield of soybeans and corn. (Doc. 1, at 25). This zip file contains historical aggregate yields for the production area of Cherokee County, Iowa, for irrigated and non-irrigated soybeans (from crop years 1991 to 2014) and for irrigated and non-irrigated corn (from crop years 1991 to 2014).

Plaintiff appealed the agency's response. The agency upheld its "no records" response on appeal. It is undisputed that plaintiff fully exhausted all administrative remedies. It is undisputed that this Court has jurisdiction.

Defendant provided an affidavit dated May 4, 2017, by David P. Zanoni, Chief, Requirements Analysis and Validation Branch, Risk Management Agency (Affidavit). (Doc. 20-3, at 2-15). The Affidavit explains in significant detail the relationships between the Federal Crop Insurance Corporation (FCIC), approved insurance providers, private crop insurance agents, and the RMA, and RMA's operation of the crop insurance program. (*Id.*, at 2-4). The Affidavit further explained the types of records RMA

---

[1] A section is "a unit of measure under a rectangular survey system describing a tract of land usually one square mile and usually containing approximately 640 acres." (Doc. 20-3, at 9).

generates as a result of its operation regarding crop yields. (*Id.*, at 4-5). Significantly, it does not create records reflecting crop yields by section.

The Affidavit explained that RMA obtains some information from insurance providers to ensure compliance with the Federal Crop Insurance Act, and that these records contain personal identification information, such as names, addresses and Social Security numbers of the insureds. (*Id.*, at 5). The information is derived from documents that belong to the insurance providers and not RMA. (Doc. 20-3, at 4). The Affidavit further explained that RMA uses that information to populate a Comprehensive Information Management System (CIMS), which is a system of computer programs and databases used in administering the FCIC and Farm Service Agency programs. (Doc. 20-3, at 6). There is no information in CIMS, therefore, that is not otherwise held by RMA. (*Id.*).

The Affidavit explained the search RMA undertook when it received plaintiff's FOIA request. RMA searched its Corporate Reporting Business Intelligence (CRBI) database, a database it uses to construct data reports. (Doc. 20-3, at 8-9). Data reported and collected in this database is not maintained in aggregate form and requires development of a search algorithm to retrieve and aggregate the data. (*Id.*, at 8). RMA is not provided with production data by farm section, as plaintiff requested, and does not maintain native records that would contain all of the production data by section. (*Id.*). The Affidavit explained that some production data may be collected either as part of an insurance claim or as part of a yield and production history; none of RMA's databases contain total production, acres harvested, and yield for corn and soybeans by section within a county because RMA does not collect that data. (*Id.*, at 8-9). The Affidavit further explained that, to the extent RMA had any production data from production and acreage reports, they typically would not "align in terms of land location," meaning that they would not correspond to sections because RMA began in 2010 to phase out the use of sections as a land location identifier for such data. (*Id.*, at 9). The Affidavit further explained that the limited search results from the CRBI database would be misleading

because only if a claim of loss was filed could the agency even arguably match single sections from past acreage reports to particular production reports. (*Id.*, at 8-9). In the Affidavit, defendant acknowledged that it did not search the CIMS database, explaining that CIMS does not contain any additional crop insurance data that other systems otherwise contain. (*Id.*, at 5).

Despite these limitations, RMA "developed a specialized query to recreate the circumstances that would allow the retrieval of records meeting" plaintiff's request to retrieve any data reported by section in the four townships where a loss claim was filed, during the requested time period of 2012 to 2015. (*Id.*, at 10). "The search returned 426 individual records (not individual producers)." (*Id.*). When the data was aggregated by section, "the most records returned by section in the sample was 7 [per section][2], which occurred once out of 1,152 opportunities (144 sections x 4 years, x 2 crops), and the remainder of the records returned by section in the sample was fewer than 7" per section. (Doc. 20-3, at 11).[3]

The Affidavit explained that defendant would be prohibited from disclosing these results because of Exemption 3 of FOIA (as the limited results could be easily reverse engineered to reveal the identity of the producers). (Doc. 20-3, at 12-14). Under Exemption 3, 5 U.S.C. § 552(b)(3), a matter is "specifically exempted from disclosure by statute." According to the Affidavit, the governing statutes include Section 1502(c) of the Federal Crop Insurance Act (*see* 7 U.S.C. § 1502(c)(2)(A) holding that agency may only disclose to the public information provided by the producer if it "has been transformed into a statistical or aggregate form that does not allow the identification of

---

[2] The Affidavit explains that RMA has never developed and does not use data suppression rules that would apply to the section level because it is so small (one square mile), and instead uses a county as the lowest geographic aggregate. (Doc. 20-3, at 10).

[3] The Affidavit notes that even these results would not accurately reflect the production, acres and yield because, as previously explained, the data would only be collected when losses were reported and only on the acres on which a farmer claimed losses. (Doc. 20-3, at 10).

the person who supplied particular information"), and Section 1619 of the Food, Conservation, and Energy Act of 2008 (*see* 7 U.S.C. § 8791 (b)(2)(B)) (USDA shall not disclose "geospatial information otherwise maintained by the Secretary about agricultural land or operations [provided by an agricultural producer or owner of agricultural land in order to participate in Department's programs]").

The Affidavit explained that RMA "employs data suppression techniques defining the sufficient number of records to constitute 'transformed into a statistical or aggregate form that does not allow the identification of the person who supplied particular information' for the purposes of section 502(c) of the Federal Crop Insurance Act." (Doc. 20-3, at 11). RMA's subject matter experts, "in consultation with other Federal agencies . . . determined 15 records within a county to be a reasonable number of records for crop insurance that would balance transparently providing data to the public while ensuring statutory protections of producer provided information." (*Id.*, at 12.) The Affidavit explains that RMA has never developed and does not use data suppression rules that would apply to the section level because it is so small (one square mile), and instead uses a county as the lowest geographic aggregate. (*Id.*, at 11). Because the search resulted in, at most, only 7 records per section (far fewer than would be required to permit disclosure of data at the county level, which has a greater geographic size than a section), RMA determined that disclosure of the information would permit identification of producer information in violation of the Federal Crop Insurance Act and the Food, Conservation, and Energy Act of 2008.

## V. ANALYSIS

A brief overview of FOIA may prove useful. The purpose of FOIA is to give the public greater excess to governmental records. *See Forsham v. Harris*, 445 U.S. 169, 178 (1980) ("Congress undoubtedly sought to expand public rights of access to Government information when it enacted the Freedom of Information Act, but that expansion was a finite one."); *see also Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) ("The FOIA represents a carefully balanced scheme of

public rights and agency obligations designed to foster greater access to agency records than existed prior to its enactment."). Generally, all agency records are accessible under FOIA. *See Forsham*, 445 U.S. at 178 (FOIA does not provide a definition of "agency records"); *see also DiViaio v. Kelley,* 571 F.2d 538, 542 (10th Cir. 1978) (holding that to define 'records' a court may rely on "a dictionary meaning of the word 'record' defined as that which is written or transcribed to perpetuate knowledge or events")).

There are, however, nine categorical exemptions of agency records that are immune to a FOIA request under Section 552(b). These nine exemptions are "narrowly" construed as to favor a policy of disclosure instead of secrecy. *Miller. v. U.S. Dep't of Agric.*, 13 F.3d 260, 262 (8th Cir. 1993). An individual seeking right of access to records under FOIA must "reasonably" describe the records requested. 5 U.S.C. § 552(a)(3)(A); see *Hudgins v. I.R.S.*, 620 F. Supp. 19, 21 (D. D.C. 1985) (FOIA request must be "sufficiently detailed" so the agency employees could be reasonably expected to find the requested documents) (citations omitted). When an "agency" improperly "withhold[s]" its "agency records," 5 U.S.C. § 552(a)(4)(B), a federal court with jurisdiction may "order the production of any agency records improperly withheld from the complainant."

### A. *Plaintiff's inadequacy-of-the-search claim*

Plaintiff argues that defendant's search was inadequate because it produced no responsive documents. When confronted with an adequacy of search claim, federal courts apply a "reasonableness" test to decide if the agency's search methodology was adequate. *Campbell v. U.S. Dep't. of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998).

Summary judgment for an agency is appropriate when the agency shows that "'it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" (*Id.* (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990))); *see also Miller*, 779 F.2d at 1383 ("the agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents . . . [T]he search need only be reasonable; it does not have to be exhaustive.") (internal quotation marks and

citations omitted). The agency does not have to "search every record system." *Oglesby*, 920 F.2d at 68. The "reasonableness" inquiry considers many factors, *inter alia*, the amount of staff and time that must be devoted to the search, as well as the other individual facts of the case. *Landmark Legal Found. v. E.P.A.*, 272 F. Supp. 2d 59, 63-64 (D. D.C. 2003).

An agency can prove its search adequate with the submission of "reasonably detailed, nonconclusory affidavits submitted in good faith" to the court. *Id.*, at 62. (quotation marks and internal citation omitted); *see Miller*, 779 F.2d at 1383 (same). Such an affidavit is given great weight. *Miller*, 779 F.2d at 1383 & 1387 (holding that the department's affidavits sufficiently carried the department's burden of proof and that plaintiff made no showing that the affidavits were submitted in "bad faith."). S*ee also Chamberlain v. U.S. Dep't. of Justice*, 957 F. Supp. 292, 294 (D. D.C. 1997) ("It is well established that agency affidavits enjoy a presumption of good faith that withstand purely speculative claims about the existence and discoverability of other documents.") (internal quotation marks and citation omitted). To rebut the presumption that an agency's affidavit is in good faith, reliable at face value without additional inquiry, clear evidence of bad faith is needed beyond a "purely speculative claim[ ] about the existence and discoverability of other documents." *Physicians for Human Rights*, 675 F. Supp.2d at 159 (alteration in original) (internal quotation marks and citation omitted).

If the records leave "substantial doubt" as to the adequacy of the agency's record search, *Campbell*, 164 F.3d at 27, or in other words the agency's search process was "materially disputed on the record," *Miller*, 779 F.2d at 1383, then summary judgment is inappropriate. Such a material dispute may exist, for example, where a plaintiff can show that "further search procedures were available without the [agency]'s having to expend more than a reasonable effort."). *Miller*, 779 F.2d at 1383.

> 1. **Defendant asserts no obligation to create new records under FOIA request**

It is well-established that "FOIA neither requires an agency to answer questions

disguised as a FOIA request, or to create documents or opinions in response to an individual's request for information." *Hudgins*, 620 F. Supp. at 21 (citing *N.L.R.B. v. Sears, Roebuck and Co.*, 421 U.S. 132 (1975)) (internal citation omitted). *See Forsham*, 445 U.S. at 186 ("FOIA imposes no duty on the agency to create records. By ordering [the agency] to exercise its right of access, we effectively would be compelling the agency to "create" an agency record since prior to that exercise the record was not a record of the agency."); *see Landmark Legal Foundation*, 272 F. Supp.2d at 64 (no duty to create new records); *Kissinger*, 445 U.S. at 152 (same); *Hudgins*, 620 F. Supp. at 21 (same).

Here, the record shows that RMA did not maintain records matching the description of plaintiff's request. Although it collected some information from records of insurance companies on claims that would contain some of the information plaintiff sought, it simply did not maintain records containing the precise information claimant sought in his FOIA request. Defendant did not have an obligation under FOIA to create records for plaintiff.

### 2. *Defendant's Search for Documents Was Reasonably Calculated to Uncover All Relevant Documents*

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Fischer*, 596 F. Supp.2d at 42 (internal quotation marks and citations omitted). Here, defendant searched databases reasonably likely to hold information responsive to plaintiff's request. Defendant did not search the CIMS database, but defendant established in its Affidavit that the CIMS database does not contain information that is not maintained elsewhere in its system. The Affidavit is accorded a presumption of good faith. *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2nd Cir. 1994). An agency need not search every database, but, rather, only those reasonably calculated to produce responsive information. *Oglesby*, 920 F.2d at 68.

If the agency shows it conducted a reasonable search, as it has here, the burden shifts to plaintiff to show the agency did not act in good faith. *Miller*, 779 F.2d at 1383.

Plaintiff offered no evidence to contradict the Affidavit. Plaintiff argues that defendant should have searched the CIMS database, but has made no showing to contradict the Affidavit's explanation that the CIMS database does not contain information that is different from or in addition to the information contained elsewhere in RMA's system.

The Court finds that defendant conducted a reasonable search in good faith. Defendant found a limited number of records that were somewhat responsive to plaintiff's request. Even those records were misleadingly incomplete and inaccurate given the manner in which the data was collected. As noted in the fact section above, RMA only collected limited information about yields and only when insurance claims were made by producers and only with respect to the portion of crops upon which claims were made. As a result, this information, even if produced, would result in an inaccurate and misleading representation of crop yields by section.

### 3. Defendant asserts any responsive records are exempt under Exemption 3 of FOIA

As previously noted, defendant did not have documents in existence that provided the information plaintiff sought organized by section. As further noted, defendant nevertheless ran a database query in a good faith attempt to determine if it could produce the information plaintiff sought, recognizing that the information would nevertheless be incomplete and misleading. And, as noted in the prior section, defendant found a limited number of records that were of limited responsiveness. The problem, however, is that the records were so limited in number that disclosure of the information, even if it were provided in aggregate form, would "allow the identification of the person who supplied [the] particular information," which is prohibited by statute. 7 U.S.C. § 1502(c)(2)(A). Exemption 3 of FOIA protects matters specifically exempted from disclosure by statute. 5 U.S.C. § 552(b)(3).

Here, disclosure of these limited records would allow a third party to determine the origin of the producer. Defendant explained in the Affidavit that it has determined that aggregation of 15 records within a county is a reasonable number of records for crop

insurance that would balance transparently providing data to the public while ensuring statutory protection of producer-provided information. The subject records here number, at most, 7 records per section (and in most cases 1 or 2), a number low enough that, in the Agency's assessment, would permit a third party to reverse engineer the data to identify the source of the information in violation of 7 U.S.C. § 1502(c)(1). The Court finds that defendant's assessment of the number of records necessary for aggregation in a manner so as to prevent identification to be reasonable. Accordingly, release of these records at the level requested by plaintiff would run afoul of the law and therefore fall within Exemption 3.

Plaintiff argues that defendant must produce data in aggregate form, that aggregate means two or more, and that, therefore, defendant must produce all data for two or more producers. This argument substitutes a dictionary definition for the statutory requirement that defendant aggregate data so as to prevent the identification of individual producers. The Court also rejects plaintiff's argument that the identity of the producer may not be readily apparent because the producer may be operating under the name of a corporation or other entity, and therefore disclosure of the information may not reveal the producer. This is speculation. The Agency is charged by statute with protecting the identity of the source of the information and to do so by releasing information in sufficiently aggregate form to prevent identification. The Agency cannot count on the possibility of producers operating under fictitious legal entities to prevent such identification.

### B. *Plaintiff's claim for attorneys' fees and costs*

Under Title 5, United States Code, Section 552(a)(4)(E)(i), a District Court may "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." Plaintiff seeks both (1) attorney fees and (2) other litigation costs. A complainant has substantially prevailed under Section 552(a)(4)(E), if he "has obtained relief through either – (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if

the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). The Court finds that plaintiff has not substantially prevailed and therefore is not entitled to attorneys' fees or costs. *See Simon v. Fed. Bureau of Prisons*, 16-cv-00704-ADM-KMM, 2016 WL 5109543, *5 (D. Minn. Aug. 29, 2016), *report and recommendation adopted*, No. 0:16-CV-704-ADM-KMM, 2016 WL 5219582 (D. Minn. Sept. 20, 2016) ("Congress amended § 552(a)(4)(E) through passage of the OPEN Government Act of 2007"); *see also Miller*, 779 F.2d at 1389 (to substantially prevail does not necessarily mean that plaintiff received a favorable judgment).

Although the Court need not address this matter further, the Court nevertheless will address plaintiff's claim that it is unconstitutional to award attorneys' fees to prevailing pro se attorney-litigants under Section 552(a)(4)(E), but not to prevailing pro se non-attorney litigants. (Doc. 3, at 11-16). This point, however, is settled. *Coolman v. I.R.S.*, 1999 WL 675319, at *7 (W.D. Mo. July 12, 1999), *aff'd*, No. 99-3963WMSJ, 1999 WL 1419039 (8th Cir. Dec. 6, 1999) ("[S]ince plaintiff is a *pro se* litigant, he may not recover attorney fees under the FOIA.") *See also Simon*, 2016 WL 5109543, at *5, ("[N]o real dispute between the parties that [plaintiff] cannot recover attorney's fees because he has litigated this [FOIA] case pro se."). Other circuits agree. *See Benavides v. Bureau of Prisons*, 993 F.2d 257, 259 (D.C. Cir. 1993) (holding that pro se non-attorney litigants are not eligible under FOIA for attorney's fees).

## VI. CONCLUSION

For the reasons set forth above, the Court grants defendant's motion for summary judgement (Doc. 20). Judgment shall enter against the plaintiff.

**IT IS SO ORDERED** this 17th day of August, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa